Good morning, Your Honors, and may it please the Court, my name is Cliff Gardner. I represent Mazin Alotaibi in this case, and I'd like to request five minutes for rebuttal. I will keep my eye on the large and well-placed clock in front of me, Your Honors. I could hardly do otherwise. As the Court is aware from reading the briefs, the case involves trial counsel's decision not to consult with his client about the trial court's offer to instruct on a lesser offense. As the Court is also aware, the State Courts have addressed this twice in the context of the two-pronged Strickland test. The question is whether that decision not to consult fell below the standard of care, that's the performance prong, and if so, whether there's prejudice, that's the prejudice prong. And the State Trial Court and the State Court of Appeal have weighed in on this with somewhat different takes. The State Trial Court said that, yes, indeed, the failure to consult fell below the standard of care, but it was harmless and explained a harmless error rationale. And the Court of Appeal did not address performance at all, assumed the violation and found it harmless, but did not adopt the trial court's harmless error analysis, had a very different harmless error analysis. So I'd like to make a couple of comments about both the performance prong and the prejudice prong. And of course, since this case comes from State Court, I suspect we'll have a discussion, at least a brief discussion, about 2254D as well. So let me start, if I can. Can I actually ask you to start on prejudice? So I have a question about what it seems like the Court of Appeals thought. And it seems like what the Court of Appeals thought was in the line of how this error, assuming that it was deficient performance, how the error could have actually made a difference, has to go through the stage of whether the defendant would have wanted this instruction anyway. And I read the Court to be saying, we just don't have evidence that the defendant would have wanted this. And I think, as I understood, sort of reading between the lines, it's like, why didn't he put in a declaration saying he did? And am I right that he could have put in a declaration but didn't? Yes, you are right. And I think you're right about the State Court of Appeals approach as well. I think that's what they were thinking. So it seems, I mean, so you're arguing that that's an unreasonable determination of the facts. But I'm sort of struggling with why. Because as long as he had the ability to put in a declaration, it wouldn't have been so hard to, presumably. And if he didn't, why isn't it a reasonable inference that he actually would not have agreed to this instruction anyway? Sure. And that gets directly at the 2254D component of the prejudice analysis. So let me take that on. Your Honor suggested that I believe that was the unreasonable determination. That is not why I believe 2254D doesn't bar relief as to prejudice. What I believe is this, and let me take a step back and give you the general, what I believe the general framework is in this kind of prejudice analysis. I think the State Court of Appeals asked the right question. Is there evidence to show that he would have agreed to the lesser? There's two types of evidence that can be presented to answer that question. There's objective evidence. The subjective evidence is, and that's where Your Honor's question is directed, I think the Court of Appeals thought, we need a declaration from him. There's subjective evidence. I will tell you, I know there's a great deal of experience on the bench and I've been practicing criminal law for 45 years. I can tell you in this situation, in a similar situation, when the defendant provides a declaration that says, yes, I would have accepted the guilty plea, or yes, I would have agreed to the instruction, what invariably happens and with good reason, I think, is that both prosecutors and courts say, hey, that's a self-serving declaration. Of course you're going to say that. That isn't particularly persuasive. So counsel didn't present that here. Could counsel have presented it? Yes. But even if it's self-serving so it's not enough on its own, it still is a necessary piece, I think. You could have these surrounding facts and someone could choose to have this instruction or not choose to have this instruction. So the surrounding facts might support the idea that he would have chosen it if he was saying that. Maybe you would say, well, it's not just self-serving here because look at all the surrounding facts. But without the piece that he is saying, he would actually have chosen it. I don't understand how you get past that because that's a necessary piece of the chain of causation. Well, you get past it for purposes of 2254D, I think, Your Honor, because one of the approaches to 2254D is designed to give deference to reasoned state court judgments. Something that's objectively unreasonable will not be given the 2254D deference. What is a decision that's not objectively reasonable? This Court has said, and the United States Supreme Court as well, that when a state court ignores facts that are relevant to the calculus, the constitutional calculus, that makes it objectively unreasonable. It doesn't necessarily mean the petitioner It means the 2254D deference doesn't apply. So the question here, for purposes of 2254D, is whether the state court ignored facts that were relevant to the constitutional analysis. And I believe it did. In that two-sentence harmless error analysis, the Court doesn't refer to any of the objective evidence in this case. And there's plenty of objective evidence that suggests a reasonable person with proper advice from counsel would have indeed agreed to this lesser instruction. So what if we think when we look at this a reasonable person could have made either choice? Because it seems like a reasonable person could have thought, I want to go with the option that would give a chance of having total innocence. I disagree, Your Honor. And let me explain why. I think when you look at all the objective evidence, the only decision a reasonable defendant could make is to say we need the lesser. And let me take you through the evidence that I believe supports that conclusion. But her question is, what if we think that there could be two different reasonable choices? Then what are we left with? We're not arguing about whether you think that second choice is reasonable or not, but what if we think there's two reasonable choices? I think I have to persuade you that there aren't two reasonable choices. That the only reasonable choice based on the objective evidence was that any reasonable defendant would have said let's go for the lesser. I think that's my burden. And let me see if I can establish it now in the couple minutes I have left. Let's look at the evidence. First of all, this wasn't a case, and I'm sure the Court sees this, I know I see it in my practice, where some defendants insist they are innocent of any criminal wrongdoing. I wasn't there. I'm not going to take a deal or accept a lesser because I wasn't there, I didn't do it. From the day the crime occurred, Mr. Alatebi admitted criminal conduct. He admitted having anal intercourse with a 13-year-old. That's criminal. That's criminal in every state. It's criminal in Nevada, California. But he turned down a plea offer for a lesser crime already. He did turn down a 10-year plea. And let me fold that into the context of all the other objective evidence that I believe is there. This isn't a case where he's claiming innocence. He believes he's not guilty of sexual assault. He's guilty of something lesser. But he does not say, I didn't commit criminal conduct. Second, let's look at the evidence in the case. Wait, can I pause there for a second? Because if an instruction had been given on sexual seduction, it seems like, especially given what you're saying, he wasn't denying that, he definitely would have been convicted of that. But he had defenses to the things that actually were charged here. Like, he wouldn't definitely have been convicted of the things he in fact was in the end. But he had defenses to these other things. He didn't have a defense to sexual seduction. So it seems reasonable to not want an instruction on the thing you would definitely be convicted of and to go for trying to defend against the others. And let me continue with the analysis of why I believe that that isn't reasonable. As I say, he admitted basically criminal conduct. Not sexual assault, but criminal conduct. Second, and this is something I don't think is focused on the briefs, but counsel focuses on it in the state evidentiary hearing. There was an anti-Arab bias in the jury veneer. A number of jurors were struck because they said, don't put me on if the defendant isn't Arab. And they managed to kick off a number of people. But there was a general anti-Arab veneer. That's point two. Point three. The evidence of rebutting consent was fairly strong. There was video evidence showing that he had lied to the officers about being dragged down the hall and being forced into the room. So he would have gotten the instruction. We also have, of course, the jurors' comments afterwards. We don't really believe, A.J., why wasn't there a statutory rape option? And finally, the final objective point. Well, if they didn't believe him, how could they have returned a verdict of guilty? And that's exactly the point. Because they were in an all or nothing position to a gentleman of Arab descent who admitted anal intercourse with a 13-year-old. But they weren't in all or nothing on counts four and six dealing with lewdness. And they acquitted on counts four and six, Your Honor. And it's important to note that counts four and six did not present the jury with a consent-based lesser option. Counts four and six were based on different acts than counts three and five. But it was a lesser option. They didn't have all or nothing. They could have convicted on lewdness. There was no way for the... I'm sorry. No, that was the question. There was no way for the jury to express a consent-based lesser result. Counts four and six did not give them that option. Okay, if we find consent, we can convict them of four and six. Because four and six, and you can look at the charging document. It's at pages 165 and 166 of the excerpt of record. Counts four and six were based on different acts of count three and five. But also had intoxication would have been a defense. Yes, intoxication would have been a defense to all the lewdness charges in four, six, seven, and eight. And it's not really different acts. If you look at what the defense argued in closing, they were arguing that if Mason's penis went into the boy's mouth, then it's a completed act and not lewdness. But if it didn't, then it would be lewdness. Yes, exactly. And I'm going into my time for rebuttal to answer the question if that's okay. And AJ actually denied that these other acts occurred, and that's why the jury acquitted. But these acts, counts four and six, counts three and five required penetrative acts. Counts four and six did not. So there was no way for the jury to express a consent-based lesser based on the penetrative acts. That would put them in an all or nothing position as to those two. And because of the four areas I discussed, the evidence, the anti-arab bias, the disparity in sentence, I believe that the only reasonable decision a rational client would make would be we need to get that lesser. I'm not, the jury isn't going to walk me out of here. So I understand that the jury acquitted, but it's kind of confusing because I don't understand how the lewdness acts wouldn't have to precede the more serious acts, just physically. What your Honor says makes logical sense. The problem is with AJ's testimony when he was asked did he do any of these other things, did he fondle, did he touch, AJ said no. And that's why the jury acquitted on counts four and six. I can see your Honor's skeptical look, but that does explain the acquittals, and if I can reserve the rest of my time. Would you tell me again, remind me what the sentencing difference was? Yes. The sentencing difference, and this counsel was under a misapprehension when he made the decision not to consult with his client. The disparity is enormous. The sentence for sexual seduction is one to five years. Sexual assault is a life term in prison with eligibility for parole after 35 years. A reasonable defendant advised about all the evidence in the case, the anti-error bias, the fact that you can probably get this instruction, is going to say 35 years to life, I'm going to serve 35 years, I will take the lesser. I've dealt with many clients over the years, and I work with them, and I believe that's the reasonable decision they would make. Is there any evidence of a plea, just out of curiosity, that there was a plea offer? There was a plea offer of something, as I recall, it would have given him about 10 years. One of the factors when counsel is directly asked in the state evidentiary hearing why didn't you consult with him, he says, well, he was offered 10 years, and the sentence for seduction is about 10 years. He would have gotten four years for each count, it's one to 10, so there's no difference, so that's why I didn't even consult with him. That, of course, is a mistake. He was wrong about that, and under Hinton v. Alabama, we're getting back to the performance bond, which we skipped over, but that's why in the performance bond, I think that's why the trial court in state court found that, in fact, it did fall below the standard of care because, at least in part, he based the decision not to consult with his client on a mistake of law. Let's let you save the rest of your time. Thank you. Good morning, Your Honors. My name is Michael Bongard. I'm with the Nevada Attorney General's Office, and I'm representing Warden Brightenbach, the respondent in this matter. Briefly, just to follow up on Judge Herr's question, the plea offer in this case was to either one or two counts of lewdness. The attorney couldn't remember for sure, but he thought it was one, and it makes sense because that would have been the penalty, so 10 years, he rejected that. Your Honor, I'm going to start my discussion with the prejudice prong, and I'm going to focus initially on the state court decision, and then I'll move to a de novo review of that prong, and then finally to the deficient conduct if there's any questions. My colleague talks a lot about subjective evidence in the record regarding consent, but there was an objective piece of evidence in the record that gets in the way of that. That's during the evidentiary hearing. Trial counsel testified that they talked about the instructions, they talked about consent. They were going round and round, he said, and there were two things that counsel, or two questions that counsel wanted answered at that point. One was the court's question on whether they wanted a statutory sexual seduction issue, but counsel's overriding concern was the fact that at that point, his client had changed his mind and was inclined not to testify, and that would have prevented some effective and compelling testimony regarding what they called the victim's withdrawal of consent. Was that actually there? Did that actually happen? The defendant said, you're the lawyer, you make the decision, and that sounds so much like counsel under Strickland gets to make reasonable strategic decisions. Sorry, are you arguing, is this about, I'm not clear if you're arguing prejudice or deficient performance. It sounds like you're saying it wasn't deficient performance. It actually fits to both, and here's why it fits to both. Because the state court of appeals said that there's no evidence in the record that the defendant would have consented to a statutory sexual seduction instruction. And again, the defendant said, you make that decision, it's a strategic decision, you make it, you're the attorney. So are you arguing that he wouldn't have consented if the lawyer hadn't wanted him to? No, I don't think so, but it certainly lends support to the lawyer's decision not to, because before that, if you look at the excerpts of instruction, the excerpts of the record, and specifically the trial transcripts when they were settling instructions, and I believe it starts around 888, where there was discussion that trial counsel wanted to make sure that his defense with his client was going to be acceptable both to the court and was going to be unobjectionable to the prosecution. And that was, he was going to argue consent, as far as a defense, to the sexual assault instructions. And he was going to argue inability to form specific intent as the defense to the lewdness charges and the other specific intent crimes. And I'm just going to refer to them as the other crimes because they're really not at issue here. So we've got, as the jury was instructed, we've kind of got a layer. We've got sexual assault. Then we have the lewdness charges, four and six, the ones that ultimately the jury didn't return guilty verdicts on. And then we have not guilty. However, and first of all, that's not an all or nothing choice. Both the state court found that, and both the district court found that. There wasn't an all or nothing. This wasn't a straight all or nothing. And I believe this court's decision in Crase talked about that. Again, it's different because it deals with lesser included as far as opposed to lesser related instructions. But I think the framework is similar that in this case, the jury didn't have that all or nothing. There was a middle ground. I'm a little confused. The state court found that on the deficient performance, that we had a finding in the state court that the performance was deficient. Did we not? It was confusing because, and I deal with this all the time, that I often see in the state court, state district court decisions that where they talk, the state district court in this case found that it was deficient conduct not to confer about the instructions. But they didn't find it was deficient to not request the statutory sexual seduction instruction. They found that that was based on strategy. And so to the extent that there was kind of a 1A, 1B. They found it was deficient not to give the client the opportunity to choose. They found it was deficient not to confer with him about the instructions. Yeah. But they didn't find that. They found that it was a strategic decision not to request it. Right. And so, and again, I'm kind of bouncing around here, but the crux of the state appellate court decision was that there was no evidence in the record that the defendant would have given his consent to that instruction. And that's because we got his statement, you're the attorney, you make the choice. He was given control of that to his attorney. So counsel made what he thought was a strategic decision. That instead of a three choices with the best case scenario, you're going to be convicted. I'm still really confused about how you're drawing, connecting the dots here. Are you basically saying he was given the choice and he gave it to the attorney? Because he wasn't given this specific choice. I'm very confused by how you're using this statement to answer the question that's at issue here. Okay. So when it came, let me see if I can make it a little bit clearer, Your Honor. Before the break where he went to talk to his client, he told the court, yes, I'll discuss the instructions with my client. He talked about a number of things. He talked about the issue of consent. He talked about some of the instructions. The record reflects that the defendant was confused that there was much repetition in there. But ultimately, the trial counsel said that him and Mr. Al-Atabi went round and round. And Mr. Al-Atabi eventually said, you're the attorney, you make the decision. Okay. Now, why that fits under the prejudice prong for the state court is because the state court said there was no evidence that he would have consented to that statutory sexual seduction instruction. He told counsel, you make the decision. And you think that statement related to this specific question of whether this charge should be given? Well, it certainly goes to the question that the court wanted answered. There was no evidence in the record that Mr. Al-Atabi would have requested a statutory sexual seduction instruction. But I did not understand your brief to be arguing that at this, in this break where they were talking, the lawyer actually asked the client, do you want to give this instruction? And again, that goes back to the state. A different colloquy. I'm sorry, Your Honor. I thought that happened in a different colloquy between the lawyer and the client. It, well, it, there were a couple of colloquies that, that obviously took place here. One was after they broke after, for lunch, after they discussed the instructions and trial counsel said I was going to discuss the instructions. During that time they, they discussed, the notes reflect the, and this is again trial counsel's testimony that they discussed a lot of things. They got to the issue of consent. They got to the issue of whether Mr. Al-Atabi would testify and Mr. Al-Atabi had changed his mind. So at that point, again, he tried to impress upon him the importance of him testifying because he felt it was, trial counsel felt it was his decision was going to be that he was going to request, not request that instruction. When he tried to explain those things to Mr. Al-Atabi, that's when he said during that instruct, during that colloquy, you're the attorney, you make the choice. But he never explained that this instruction was an option. He, he said that either Mr. Al-Atabi understood and was being difficult or that he didn't understand but ultimately at the end of that was when he, when he told trial counsel you're the attorney, you make the decision. Wait, I, didn't the lawyer admit that he never talked to him about this instruction? I don't understand where you're getting the facts you're saying to us today. He wasn't, he was getting into the issue of consent. He was getting into the issue of the, the instructions. He, and again, I'm going on his, his notes in that. I mean, it was, it was an assumption of the state court that no one ever talked about this instruction because that's what counsel said. We never talked about this instruction and it seems like you're coming in today now and trying to change those facts. Is that what's happening? Well, I, if I, if I'm saying it wrong, I apologize. But the crux of that was that there was no evidence at that point that Mr. Al-Atabi would have consented. Okay. That's a different question than whether when he was asked about the instruction, he said, it's your choice because you're trying to say that today, I think, and that is not what anyone has ever said about what happened in the facts of this case. During, when they were, when Mr. Al-Atabi was confused, he, that's what he ended up saying. Trial counsel ended up saying that. We went round and round. He got confused. He was either intentionally or unintentionally not understanding. And he said, you're the attorney, you make the decisions. But if that was, I mean, they could have been talking about, you know, whether to strike a juror and he could have said, you're the attorney, make that. Oh no, that wasn't. I'm just saying, hypothetically, the fact that those words came out of his mouth, don't tell us whether he would have accepted this instruction unless what they were discussing was this instruction. And everyone has always assumed in this case that they were not discussing this instruction. So you're trying to change that today. Well, my take from that discussion was that he was attempting to under, attempting to explain the issue of consent and attempting to explain the instructions and trying to put everything into a big picture. But ultimately, again, Mr. Al-Atabi said that it's counsel's, it's counsel's choice. But what that, irrespective of that, there's no evidence in the record that Mr. Al-Atabi would have agreed to that. At the evidentiary hearing, they had a chance to put him on. As Your Honor said in the question to opposing counsel, they had a chance to put counsel's declaration in the record. Well, that was the reason that the state court, as I understand it, said that there was no prejudice, was that there was no showing that he would have accepted it. Right. Is that correct? That's correct, yes. And we owe some deference to that, do we not? Well, I think you can owe a lot of deference to that because of the fact that the things that are brought up about there being an all or nothing option, that there was evidence that A.J. withdrew his consent, gave his consent, or gave his consent and then withdrew the consent when he said things started getting too weird. I think, Your Honor, that the case that is cited in the opposing brief for the fact that, the fact that you can deviate from the findings if there's something in the record, you know, that is really not considered. And that was Taylor versus Maddox. And in that case, what apparently the state courts rejected or didn't even discuss in their decisions, you had the defendant saying, this is what happened. You had the law enforcement officer saying, this is what happened. But what you had in addition was you had the attorney that the defendant said he wanted a call coming in and testifying, yet that we had a discussion immediately after his release. This is what he said, which kind of gave some additional credit to what the defendant said. And he had both state courts, the appellate court and the district court, not even considering it. We don't have that here. We have a record where there's evidence, yes, that Mr. Alatebi said that this was consensual. But ultimately, the question is, how many lesser relateds do you want in there? Do you want it so watered down that ultimately what happens is that acquittals off the table, period? I'm sorry. Normally, when we look at prejudice, you have to see if there's subjective evidence that's supported by the objective evidence. Subjective would normally be Mr. Alatebi saying, I would have asked for this instruction. Is that by the objective evidence? But here, we have really, really strong objective evidence because there's such a huge disparity between the sentencing. Does there really need to be subjective evidence to back that up? Well, you have a couple of things in the record that I don't say they watered down, but there's some questions that are created. And one is the fact that counsel and Mr. Alatebi had agreed that he was going to testify and that there were going to be a lot of things about AJ's consent that they were going to get into to really bolster their case. But that didn't happen. He changed his mind. And counsel said that his not testifying was against his request. But you also, again, you had a statement and putting it in the worst light to the state, you had Mr. Alatebi stating that the attorney needs to make the legal decision. And in this case, requesting not a lesser-included, a lesser-related instruction, which again, would have required some consent because a lesser-related has facts in it that are not in the charging document. I think realistically, if you came, let's assume the opposite of what happened actually happened, happened. Mr. Alatebi requested the statutory sexual seduction. He was colloquied by the court. He, at that point, what happens is you've got still the two levels that were there, but as a third alternative, you have a, not going home, you have a conviction. You're over your time, unless my colleagues have other questions. Thank you. Okay, I was going to just wrap it up real quick. But saying that, ultimately, there was not an all or nothing. What would have happened had the statutory sexual seduction instruction been requested is you have prison and there's no other alternative. He's not going to walk out the door. Thank you. We understand the argument. Let's put four minutes on the clock for rebuttal, please. Thank you. Very kind, Your Honor. I appreciate it. I have three points to make in what I thought was the minute and 38 I have, so we may get out early. Based on my colleague's argument, I was a little confused about the record as well, about what the argument was with respect to whether this specific instruction was even discussed. At EOR page 1242, this is during the evidentiary hearing where counsel's being questioned. They're talking about the hour and 15 minutes break after the instructional conference. Recall they started the instructional conference, defendant wasn't even there. Then he arrives sometime thereafter, and the court says, well, the only reason we started without you is because your lawyer has promised to go over, quote, every single thing with you, end quote. Even then, his interpreter isn't there. His interpreter arrives at the very end of the instructional conference, and the court repeats that and says, don't worry, he's going to go over everything. In questioning defense counsel about that hour and 15 minutes, here's the question defense counsel asked. Would it be fair to say you basically gave up on trying to make him understand what the statutory seduction was about? No, I think it is better to say I just didn't even bother to try. There's no doubt that this wasn't discussed. Any confusion, the arguments, I just want to clear that up. Counsel made the point that defense counsel made a strategic decision not to request it. That's sort of a talismanic word. If it's strategic, it's all over. Strickland says there's no problem. The problem is that strategic decision was marred by a fundamental misunderstanding of the punishment for the sexual seduction charges. We know under Hinton v. Alabama that a decision made based on a mistake of law cannot be strategic. It's not reasonable. The decision not to consult was not a reasonable one. That's why the trial court, I think, standard of care. Let me get back to the questions. I received a number of them and my colleague received them as well about the subjective declaration. Could counsel have provided one? Sure, he could have. I guess I'll use the word irony. It may be inappropriate. There's something ironic about saying that, yeah, there's a lot of objective evidence here, including the enormous disparity, including the presence of the anti-Arab sentiment, including the obvious evidence. There's a lot of objective evidence that you would have taken it, but we're going to bar you from relief because you didn't provide a declaration that every single prosecutor and virtually every court has said is self-serving and unpersuasive. To me, I don't think that there's a legal barrier to relying on powerful objective evidence. For purposes of 2254D, as opposed to the merits, the question isn't whether this objective evidence carries the day. Can I just ask, because we don't have this declaration, I'm not sure I'm familiar with the cases on this. Have the courts said that such a declaration is irrelevant or just not sufficient? No, they've said it's unpersuasive, self-serving, but it's not irrelevant. The fact that you may not present a piece of relevant evidence doesn't foreclose relief if there's other evidence that carries your burden. It is the defendant's burden to prove that, in fact, there's evidence showing that there would have been a request for that lesser instruction. I believe the objective evidence is sufficient in this case. Yes, in a perfect world, I'd go back and talk to counsel who's creating this record and say, hey, put in a deck. I know it's going to be viewed as self-serving, but it dots an I and it crosses a T. I don't think that the fact that an I wasn't dotted and a T wasn't crossed is the reason to bar relief in this case. For 2254D purposes, a more basic purpose, is that whatever we may disagree on the objective evidence, your honors may go back and confer and say, well, Gardner's discussion of the objective evidence isn't sufficient, and that may be the case, but what we agree on is that evidence is relevant, and the state court of appeal did not discuss any of that relevant evidence, and that's why this isn't the kind of state decision that 2254D was designed to require this court to defer to, because relevant evidence that discussed in Taylor v. Maddox wasn't even discussed. I am out of time, even the additional time your honors were able to give me. Thank you both sides for the helpful arguments. This case is submitted. Thank you, your honors.
judges: SCHROEDER, FRIEDLAND, Schreier